This is our next case of the morning. People of the State of Illinois v. D'Amico Slater, 414-0677. For the appellant, Mr. Brockett. For the athlete, Ms. Brooks. You may proceed. Good morning. May it please the court. My name is Warner Brockett, and on behalf of the Office of the State Appellate Defender, I am pleased to represent Mr. D'Amico Slater in this matter. Mr. Slater's appeal presents five issues. However, in the interest of time, I'll want to spend the majority of my time focusing on issues one through three. But of course, if your honors have any questions about issues four and five, I'll be more than happy to address them. As for issue one, your honors, although a defense counsel is afforded wide discretion in all decisions pertaining to trial strategy, the Illinois Supreme Court has made it clear that there are at least five key decisions that ultimately rest with the defendant in the criminal case. In the case of People v. Brocksmith, the Supreme Court established that at least one of those decisions is the decision to decide whether or not to ask for or to tender an instruction on a lesser-included offense. Now, of course, the decision whether or not to tender such an instruction, ultimately counsel, it does require some type of advice from counsel, at least in terms of helping the defendant evaluate how such an instruction may be used. Counsel can't conflict with the strategy that was pursued up to that point, but ultimately the defendant is the one who decides whether or not he or she wants the instruction. And counsel can't make that decision for the defendant and justify it as trial strategy. Well, essentially that's exactly what happened in Mr. Slater's trial. If you look at the Krinko hearing, counsel testified that he, and not Mr. Slater, ultimately decided that he did not want to tender the lesser-included offense instruction on attempted possession. Counsel testified that he discussed the matter with Mr. Slater and that ultimately he decided that a lesser-included instruction would conflict with his strategy that he pursued up to that point, which was to prove that Mr. Slater did not have possession. Do we know whether the defendant ultimately acquiesced in that recommendation from counsel? Counsel never testified that Mr. Slater agreed with his advice. Was he asked? I'm sorry? Was he asked? Was Mr. Slater asked or was counsel asked? Was counsel asked that follow-up question? If I'm sitting there as a trial judge and he says, we played with the idea of doing that, to me that means, unless he was using the imperial we, means he was talking to his client about it. And then he said, I found it best that we don't do that. So that's possibly contradictory, but at the same time it suggests they discussed it. Right. And then when he says I, does that mean I made the decision on my own or I said, we don't want to do that when we're saying that they're not your drugs. And the defendant grunts. Okay. As a trial judge, I could think that. But it would have all been cleared up if somebody would have said, did your client say okay? Right. And they didn't do it. Right. The trial court didn't do it. So what should I draw from that? That you can draw that based on his testimony that he was the one that essentially made the decision and that he disregarded Mr. Slater's request. Because Mr. Slater testified that he wanted the instruction. I mean, it was clear on the record. And counsel never refuted his allegation. Counsel essentially said that, well, I quote, he said, well, regarding whether or not to educate the jurors in regards to the lesser included, I decided that as a matter of trial strategy, I just didn't want it. I didn't want to do it. I mean, it's clear from counsel's exchange with the trial court that he didn't discuss the matter with Slater, but ultimately he found that the matter was in conflict with his trial strategy. So he decided that it wouldn't have been good to that. It would have been the right to act. So you think that exchange or that answer conclusively establishes that he made the decision on his own? I believe it's so. At least it's – I mean, he uses the word I instead of me, which probably would have been a little bit more ambiguous. But he uses I, which just indicates that only he was the one who thought that it was up to him to decide whether or not to tender the instruction. And so essentially he just never refuted Mr. Slater's allegation. And what made it even worse is that the trial court actually agreed that he actually thought that as, you know, as a matter of strategy, that counsel could essentially refuse Mr. Slater's request to tender the instruction. And so it seems that that's what happened there. And I think the law is clear that when we have this exchange on the record where counsel essentially says that I was the one that did not want the instruction and the defendant says, no, I did want the instruction, but counsel refused to tender it. I think the law is clear in the Brocksmith that that's grounds for a new trial. Essentially we have a full-blown exchange on the record. And I just don't see how, I just don't see what else counsel could, what else we need to explore here in terms of who made the actual decision. So if you all just don't have any other questions for issue number one. We'll jump in and ask them. Go ahead. Okay. So I'd like to proceed to issues two and three. These two issues basically overlap. These deal with the three text messages that the state used essentially to establish that Mr. Slater somehow had the intent to distribute the .7 grams of cocaine that was found on the ground next to him in the morning of his arrest. To be honest, what is necessary to authenticate text messages is something that's relatively novel in Illinois and throughout the country. However, there is some guidance, particularly cases coming out of the third district that address the issues of authenticity of text messages. Essentially what those cases explain, what was conclusively established from those cases is that text messages are, in fact, a way to be treated as any other documents, which means to authenticate them, the proponent has to at least demonstrate that the document is what he or she claims it to be. I think also what's also clear from the cases is that we also have to look at the purpose for which the proponent is introducing the documents, or in this case the text messages. And of course, I think it's clear from the record that the purpose for which the state was introducing these text messages was to prove that Mr. Slater had the intent to distribute. So I guess at this point, the state was required to provide some type of evidence, at least demonstrating that Mr. Slater was the rightful, he authored the text messages, and that he was the rightful recipient. Well, wasn't his cell phone found on his person? Yes, but that alone was not sufficient to establish that he was the one who actually sent the text messages or he was the one that was in the rightful receipt. Well, could there be an inference that would be drawn from that, that the cell phone's on his person, there are text messages back and forth? Yes, it could be, but it would have been an unreasonable inference, only in the sense that he was the rightful recipient of the text messages. Only in the sense that cell phones could be used by multiple persons, even though the owner may be the one that said, this is my phone. It could still be used by another person. I mean, that's something we don't know. And given the fact that Mr. Slater was in the company of Ms. Robeson, you know, we don't know exactly who could... It seems to me some of the cases you relied on involved cell phones that were in a drawer, not attached to a particular person. Right. To me that's a little distinguishable than somebody who's got their cell phone in their pocket. Did anybody testify that this cell phone belonged to them? No. There was no testimony that he actually owned the cell phone. Well, so that case, it is distinguishable in the sense that the purpose for which the State was using the phone, I guess you're referring to the Watkins case. The proponent in that case was the State was using the phone just to establish that the defendant owned the phone, and by inference he somehow owned the drugs that were found next to the phone. But in this case it's clear that the State was using these text messages to show that Mr. Slater had the intent to distribute. And I think, so with that in mind, that the State was at least required to provide some evidence that demonstrating that he actually was the one who authored the text messages, and that he was the one who was in the rightful receipt of them. So the State never brought anybody in from the phone company to identify this phone number as belonging to the defendant? No. It didn't happen. They used only the Detective Daly who testified that he examined the phone and that he took a few pictures of the text messages that he thought were indicative of intent to distribute. And of course they also testified that they found the phone in Mr. Slater. But again, it's my position that that wasn't enough to authenticate at least that he was the right one who actually wrote and received the text messages. And so, it just, like I said, it wouldn't have been burdensome for the State to at least bring his own records to establish that Mr. Slater was the rightful owner, or at least track down these two individuals who allegedly sent these text messages and provide evidence that he was the rightful owner. And so, I guess, it's my understanding that the State did provide some type of, at least some type of testimony as to, you know, yes, we exchanged these messages. Well, how would you find Big Raven? Well, it's my understanding that the State actually had the phone number of Big Raven and Tanisha Rayford, and so I guess with that they could have somehow or another found a way to subpoena them. I mean, they had their information, they had ways, they had leads to actually find these individuals, but they chose not to. And it just seems that, like, just that it was, it seems like it was sloppy work, you know. It seems like they could have done a little bit more, and it wouldn't have been burdensome for them to do a little bit more just to lay a proper foundation, but they chose not to. So, it's my position that the messages, they just weren't properly authenticated and that they shouldn't have been introduced. And it also leads to the third issue, which deals with the hearsay. Now, the hearsay issue, the only issue with the hearsay is the fact that these text messages were reliable, essentially. They were seriously lacking in reliability in the sense that what we had here was three very vague statements. It was one saying, I need a dime, another one saying I need a 20, another one saying that I, you did say you were going to bring it to me, right? It's, under Rule 703, the, an expert is, basically can testify to hearsay statement if he or she relies upon it in, formally on the basis of their expert opinion. But I guess with Rule 703 was adopted following the Supreme Court case of People v. Wilson. And in that case, the court stated that, yes, out-of-court statements may be used by experts, but the key is that those, whatever that information is, has to be of the sort that's reliable and that experts reasonably rely upon and formally in the expert's opinions. Well, it just seems like these text messages were, because they were just seriously lacking in any information, they were truly vague, seriously lacking in detail, there's no way that an expert could look at this and say, you know what, this provides so much information for me that I'm willing to reach another, draw another opinion as to whether the matter is in a particular case. And in this case, it wasn't that Mr. Slater had the intent to distribute. It just seems like the, at the very least, because these individuals were unidentified and we knew nothing about them, at the very least, the state was supposed to provide a little bit more to at least show the reliability of these text messages. And so I guess also the fact that there was just such a little amount of cocaine found on Mr. Slater, 0.7 grams, it actually makes the introduction of these text messages even more prejudicial, right, because 0.7 grams, the jury could have reasonably concluded that, at the very least, that it could have been used for point of personal consumption as opposed to intent to distribute. Other than those incriminating text messages, there was basically nothing else that would indicate that Mr. Slater had the intent to distribute that 0.7 grams of cocaine. So did the amount that he possessed and the way that it was packaged match up in any way with the words used in the text messages? No. It really, it didn't. Well, based on what Detective Daly testified to, I mean, we don't understand. I mean, he said, I need a 20 and I need a dime. They were, the 0.7 gram cocaine, they were packaged, I guess, into four separate units. I mean, it's just not enough information in the text messages to match it up to what it was that, however way the cocaine was packaged. So that's why it just makes it more prejudicial that they introduce those text messages and say, you know, essentially they want the jury to reach for the conclusion that, hey, look, look at what these text messages are saying, look at what the language he's using, and we have these drugs. So basically, you know, skip over a step and just find that he had the intent to distribute. And so that's why I think the text messages were very prejudicial and essentially they were the only, that was the only evidence that the state had to show intent to distribute. If your Honor's don't have any other questions, I guess Mr. Slater respectfully acted in support versus the jury. I think he should be released on his conviction and remanded for a new trial. Further questions? Thank you, Counsel. Good morning, Your Honors. May it please the Court, Counsel, my name is Allison Paige Brooks. I'm here on behalf of the people. With respect to the issue of the lesser-included defense instruction, the State's position is a Category A case under Beech with respect to the defendant's claim of ineffective assistance of counsel because the record is inadequate to resolve the merits of the defendant's claim. The defendant's claim, there is some record as to some of the predicate facts for his claim, which is that the defendant asked and wanted and asked for the lesser-included defense instruction and that they and the defense counsel had advised the defendant about the matter of trial strategy that such instruction would not be a good idea. However, the record does not have the most crucial predicate fact for the defendant's claim, which is the identity of the party who made the ultimate decision as to whether that offense instruction would be tendered. And when the defendant here says that counsel, quote, testified that he, quote, ultimately decided, I think it's where it should defer to the record of the transcript of the practical hearing to determine whether that's, in fact, what counsel said, simply asking for the instruction does not mean that this is a proximate issue. If you were teaching a group of State's attorneys or judges at a judges' conference and you took this conversation, the question would be, what would you suggest ought to be an additional inquiry? And then Crankle would be by the judge. Okay. Right. Once the judge realizes the defendant is raising a proximate claim, that there should be, ideally, an inquiry into the identity of the person who made the ultimate decision, because this is what this argument hinges on, not whether the defendant wanted the instruction or even asked for it. So one more question from the judge eliminates this, effectively it would eliminate this, assuming defense counsel said, we talked about it and I persuaded him and he acquiesced, or I told him it would be stupid to, you know, say the drugs aren't yours, but then ask that you be found lesser included. Assuming that's his answer, the issue goes away for a period of time. How about 20 seconds at the time of trial where the trial judge can say, I understand your counsel is suggesting you not ask for the lesser included, you understand it's your decision to make, do you agree with your counsel's recommendation? Yes, I do. End of story. It could have been asked, I'm not sure, under Medina, that that's required. I'm not saying it's required, but it would certainly dissipate any issue on appeal. Oh, well, even without being asked, excuse me, defense counsel could have simply made the remark at the crankle hearing that the defendant made the ultimate decision, but he did not say that. I'm talking pre-crankle, I'm talking at the time the decision is being made. Yes, that would take place. But essentially, in this argument, the defendant is relying on silence from the record, and Medina presumes the defendant made the ultimate decision, Strickland presumes that counsel made effective and appropriate decisions and acted appropriately, and under the Williams case, recognized that it could be equally assumed from the record that after consultation with counsel, the defendant made the ultimate decision, this is on point with Williams. This case is directly on point with Williams. It is not appropriate to be resolved in this appeal in terms of granting the defendant a new trial, his request for a new trial. It should be deferred to post-conviction proceedings, and the defendant does not raise this issue in the context of saying that the crankle hearing was inadequate. So that would finish off the defendant's first issue. The second issue, he did not object to the foundation for the text messages. He has to show clear, obvious error. He's not going to do that with the Watkins case, because it's distinguishable. The phone was found elsewhere. Here it was on his person, and even then, also, he says on recording from the jail that the police had seized his phone, and he also refers to messages being on the phone. So, I mean, it's an overwhelming foundation under Rule 901. But also, the Watkins case makes obvious, too, that this issue has to be viewed in a light most favorable to the proponent of the evidence. So even though the defendant claims about whether or not the inferences are reasonable, this issue has to be viewed in a light most favorable to the proponent, which was the prosecution. So the fact there's no phone company records doesn't make any difference, because here the only thing that was being, the proponent was claiming that these text messages were, were messages received by and sent, the outgoing message, the in-going messages were received by and the outgoing messages were sent by the defendant. So essentially, the identities of these other people are not relevant. They were not claimed to be the proponent. The state never claimed that that's, that these were actual people that were sending them, so it could have been the case where a police agent or a child or somebody who got a hold of the phone sent these messages. It doesn't matter who they were. They did not have to be any particular person. So that's why the defendant loses this issue. Also, the case is not clearly, it's not closely balanced. Even on the intent to distribute issue, because of the recording, the defendant says on there he's not fighting that he's, whether or not he's a drug dealer. He made that on recording. That's a pretty damning admission, even if it's not phrased directly to saying he had an intent to distribute. He never said so much, but it was a very damaging admission. Also, the fact that we have the text messages of the, well, I just won't rely on that recording part of it. So even if it's .7 grams, that's pretty damaging. And so, with respect to hearsay issue, there's actually two elements to this argument. First of all, it has to be admissible as a general matter. And to be hearsay, it has to have an assertion. Our briefs talk about what was actually being asserted here. And I think it was just important to go through the analysis for the defendant to show that some of these were phrases, questions even. What exactly is being asserted here? And then to show that, are these messages being admitted to prove the truth of the matter asserted? In other words, is it necessary to show that they're relying on the credibility of these declarants, the Tanisha Rayford and Big Raven? And what they were saying was important to show that what they were saying was actually true. Did they really want drugs? And were these actual people who really wanted drugs? That was not relevant. It was admitted here to show the effect on the recipient and to establish the incriminating nature of the defendant's replies. And this is a case like the Tice case where it was a police interrogation and the defendant complains about assertions made by the police officer in the recording of the case. And as they know, these are not admitted for the truth of what the detective is saying. It's to show, to put some sort of context and show how the defendant in that case, what his statements, to give some sort of sense to them. Because otherwise, if you're asking in an interrogation context and this police officer makes an assertion, you committed this crime, didn't you? And the defendant nods his head or says yes. One word, admission from the defendant, doesn't really mean anything without that assertion by the police officer. So, I mean, this is why if someone is asking him for drugs, according to the opinion of Detective Daly, the expert, that this is what these mean. These were requests for drugs, illegal drugs. And when the defendant says, on my way, in shorthand for on my way essentially, he is agreeing to deliver drugs and shows that the cocaine that he possessed is being held with intent to deliver. Because these were very recent in time, within a couple hours of the arrival of the police on the scene. So, even if they were hearsay, Rule 703 allows their admission. Because they don't have to be admissible in evidence in order to be sent to the jury. Because they can be of a type reasonably relied upon by experts in the field in formulating their opinions. And when Detective Daly was asked that precise question, he answered, absolutely. So, in that situation, when this court reviews the issue for abuse of discretion, when that particular, these magic words are being asked to the detective and he says, absolutely, there's not an abuse of discretion for this trial court to rule that there's a foundation under Rule 703 to admit them. Even if they are hearsay, which they're not. Just with the other issues, very quickly, the defendant does not have to be aware of the fact that the police officer is here, but doesn't have clear, obvious error on the closing argument. Because the whole issue gets down to, are these supported remarks by evidence or inferences they're from? So, even if a prosecutor makes claims about assurances or repercussions, dealing with police officers' testimonies, as long as those assertions are supported, that's okay. Essentially, here, it's proper for the defense to rely on some issue of reasonable suspicion, whereas the police officers didn't know the defendant, so therefore they lacked bias and motive to lie. So, that was not a clear, obvious. And with respect to the dispatch materials, I just want to point out that the defense relies on the issue of reasonable suspicion. Here, it's the opposite, because reasonable suspicion did not matter at all. These are abandoned drugs. He tossed them away before the police effectuated a seizure on him. So, therefore, the drugs themselves are not any fruit of the seizure. So, therefore, any lack of reasonable suspicion or suppression issue cannot result in their exclusion from the case. So, therefore, even if the police made a show of force, with a gun drawn, for example, here, that's not any way of getting the evidence thrown out. So, the defendant's request for these dispatch materials is completely irrelevant. The investigation would have been completely fruitless, and therefore, it's not a culpable claim of negligent, effective assistance. I would entertain any questions. Otherwise, I request this Court to affirm. Thank you for your time. Would you be willing to concede that prosecutors ought not be talking about the inherent credibility of police officers, because they leave this case and go on and have to go out and serve the public in the future? Is this a bad thing? Is this a bad thing for him to have said? I agreed in my brief that this was ill-advised, in the sense that it was hyperbole, and it was a generalization. So, if he had simply had to confine his remarks, the prosecutor confined the remarks to, these particular officers didn't know the defendant, and therefore, we can have a trust that they would testify credibly because they have no motive to lie. They're showing up for the defense to call. That type of argument has been upheld, but in terms of this being hyperbole or exaggeration, it's still not prejudicial in the situation of the defendant wasn't really calling these officers liars. This case didn't really hinge on the credibility of the officers who saw the tossing motion. It came down to the admissions and the defendant in reporting and the question of inference of whether that the substance was found nearby him. And also, a major damaging inference is that he, and this was a separate charge, he tried to get his girlfriends, the other person who was at the scene when the police arrived, to take responsibility, falsely take responsibility for these drugs. And it's a major, major issue of consciousness of guilt that he was responsible for the drugs in the first place. So, it's the credibility of the officers was not really all that important. So, thank you for your time. As to whether or not the record was adequate to show who made the ultimate decision to tender the instruction, I disagree with the state. It's clear counsel testified that, hey, look, I discussed this matter with my client. I ultimately decided that this matter conflicted with my strategy. So, I found that it was best that we don't tender the instruction. To me, that was a mistake. I never refuted Mr. Slater. He never said that Mr. Slater agreed with him or that Mr. Slater acquiesced. He said that I was the one that found that I should have. But it's also our strategy, not my strategy. Isn't it our strategy in the sense that we can infer from the way the case developed that the theory of the defense and what the defense was saying impliedly, the defendant was saying impliedly, these aren't my drugs. These aren't my drugs to begin with. I mean, that's also could be read into or inferred from the way he explains it. But he uses the word I. So, he never says that Mr. Slater agreed with him that we shouldn't tender this instruction. Before we know, Mr. Slater could have viewed the evidence as being kind of damaging. He probably wanted to come with a lesser conviction. So, I think the record is just clear. And also that the trial court ultimately agrees that, hey, look, this is trial strategy. You don't have a say in this essentially. This is trial strategy. I agree with counsel and I'm going to deny your claim. I think that was even more damaging to Mr. Slater. And then the state relies on Medina and Williams. Well, in those two cases, there was no exchange on the record as to who made the decision for the instruction. It was essentially the defendant raised that issue on the first time on appeal. He said that I wanted an instruction. Counsel said no. The court said, well, there's not enough on the record here to show that who actually was the one that made the decision. So, this is probably something that's better for a PC. But here we have a full-blown exchange between counsel, Mr. Slater, and the court. And counsel testifies that, hey, Mr. Slater, I refuse Mr. Slater's allegation. And then the court agrees that trial strategy justifies counsel's decision. As for the forfeiture argument for Argument 2, Mr. Slater did not properly preserve this issue. His counsel never raised an objection. But because the text messages were so prejudicial, because they essentially were the only evidence that Mr. Slater had the intent to distribute, there was no other evidence that Mr. Slater had the intent to distribute. Who was the other cannabis? The state didn't charge him on that. They used it as other crimes evidence. But at the very least, it showed in the dictum that he had the intent to distribute that. But what he was actually charged with was .7 grams. And there was nothing else to show that he had the intent to distribute. And so he went through all of these text messages, and then wanted the jury to understand what they meant. And then somehow or another skip a step and decide, well, yeah, he's got drugs on him, and he's talking about delivering drugs, so yeah, I'm going to assume that he had the intent to distribute the drugs. And that's what made the text messages so prejudicial. And as to Mr. Slater's statement that he said he wasn't here fighting whether or not he was a drug dealer, essentially he's correct. The charges present a possession with the intent to distribute. He wasn't on trial for being a drug dealer. So the statement that he made, I'm not here to fight whether or not I'm a drug dealer, it's not incriminating. He's essentially saying that that's not what I'm on trial for. The case is whether or not he had the intent to distribute .7 grams of cocaine. So with that, Mr. Slater respectfully asks this Court to grant him a new trial. Thank you very much. Thank you, Counsel. We'll take the Senator's advisement and wait for the readiness of the next case.